# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

KENNETH L. SILVERSTEIN;                        )
ARLENE K. HARRINGTON; DR.                      )
CHRISTOPHER KOPROWSKI;                         )
and DR. MARY KOPROWSKI,                        )
                                               )
            Plaintiffs,                        )
                                               )
                                               ) C.A. No. N13C-05-160 FWW
            v.                                 )
                                               )
RICHARD A. FISCHER; DONNA                      )
DELAURENTIS; WAYNE MEGILL, JR.)
MEGILL HOMES, INC., MEGILL                     )
HOMES, LLC, MEGILL                             )
CONSTRUCTION CO., INC.;                        )
WYNLEIGH DEVELOPMENT CORP.;                    )
WYNLEIGH BUILDERS, INC.;                       )
W VENTURES, INC., dba RE/MAX                   )
ASSOCIATES; and PATTERSON-                     )
SCHWARTZ & ASSOCIATES, INC.,                   )
                                               )
            Defendants.                        )
                                               )
RICHARD A. FISCHER; and DONNA                  )
DELAURENTIS,                                   )
                                               )
            Third-Party Plaintiffs,            )
                                               )
                                               )
            v.                                 )
                                               )
A-1 INSPECTIONS, LLC, A LIMITED                )
LIABILITY CORPORATION,                         )
                                               )
            Third-Party Defendant.             )

Submitted: February 11, 2016
Decided: May 18, 2016

Upon Defendants' Joint Motion for Summary Judgment
**GRANTED.**

## OPINION AND ORDER

William J. Rhodunda, Jr., Esquire and Nicholas G. Kondraschow, Esquire, Rhodunda & Williams, 1220 N. Market Street, Suite 700, Wilmington, Delaware 19801, Attorneys for Plaintiffs.

Christopher H. Lee, Esquire, Cooch & Taylor, P.A., The Brandywine Building, 1000 West St., 10th Floor, Wilmington, Delaware 19801, Attorney for Defendant, W Ventures, Inc. d/b/a Re/Max Associates.

Seth A. Niederman, Esquire, Fox Rothschild, LLP, Citizens Bank Center, 919 Market St., Suite 300, Wilmington, Delaware 19801, Attorney for Defendants, Wayne Megill, Jr., Megill Homes, Inc., and Megill Homes, LLC.

Robert K. Beste, Jr., Esquire, Cohen Seglias Pallas Greenhall & Furman, PC, 1007 Orange Street, Suite 1130, Nemours Building, Wilmington, Delaware 19801, Attorney for Defendants, Richard A. Fisher and Donna DeLaurentis.

R. Karl Hill, Esquire, Seitz Vanogtrop & Green, PA, 222 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801, Attorney for Defendant, Patterson-Schwartz and Associates, Inc.

**WHARTON, J.**

# I.    INTRODUCTION

Before the Court is Defendants' Joint Motion for Summary Judgment to dismiss claims alleged by Plaintiffs Arlene Harrington and Kenneth Silverstein ("Silversteins") for the sale of a stucco home that needed extensive repairs after the close of the transaction.[1] Defendants assert that the statute of limitations on the Silversteins' claims had run before the Silversteins filed their Complaint. The Silversteins claim that tolling doctrines preclude dismissal of their counts.

Applying Super. Ct. Civ. R. 56 to the Defendants' Joint Motion for Summary Judgment, the Court finds that the undisputed facts show that the statute of limitations for the Silversteins' claims began to run on July 1, 2008 because the Silversteins were on inquiry notice of their claims on or before that date. The Court further finds that the Silversteins' Complaint, filed on May 16, 2013, is time-barred. Therefore, Defendants' Joint Motion for Summary Judgment as to Count I through and including Count XX in the Third Amended Complaint is **GRANTED**.

# II.    FACTUAL AND PROCEDURAL CONTEXT

Richard A. Fischer and Donna DeLaurentis ("Fischers"), the original owners of the home located at 123 East Wynleigh Drive Centerville, Delaware 19807, entered into a contract for sale of the home to William A. Ward and Suzanne Ward

---

[1] The claims alleged by Plaintiffs Christopher Koprowski and Dr. Mary Koprowski are not subject to Defendants' Joint Motion for Summary Judgment.

("Wards") in April 2008.[2] The Wards hired Preferred Inspections, Inc. ("Preferred") to complete a home inspection. A Preferred representative inspected the home and issued a report on April 14, 2008 ("Preferred Report").[3]

## A. The Preferred Report

The Preferred Report shows that the inspector found several "major deficiencies" with the home. The first page of the summary of the Preferred Report contains the following:

> In addition to the home inspection, an additional more intrusive evaluation was being preformed [sic] by Cogent Building Diagnostics [("Cogent")] to determine the presence of potential moisture build up behind the stucco or stone. The home inspection evaluation revealed details which would indicate moisture intrusion onto the sheathing or into the basement on the band board. These observations were confirmed by Cogent. The boundary between the stucco and the stone does not appear to have been installed correctly and is wicking moisture back into the sheathing area. The front right corner where the garage meets the house is leaking into the basement and causing mold build up on the band board. The front unfinished sections of the basement show moisture penetration along this wall. It is recommended that Cogent do an intrusive evaluation to determine the extent and repair needed for these issues.[4]

The same notation appears on the sixth page of the Preferred Report.[5] The Preferred Report indicates, with regard to the roof covering, "[t]he front right

---

[2] Ward Sale Contract, D.I. 192, Ex. A at 8.
[3] Preferred Report, D.I. 192, Ex. C.
[4] *Id.* at Preferred Report Summary 1.
[5] *Id.* at Preferred Report 6.

4

bedroom…shows signs of flashing or roof leaks in the dormer area…The right rear family room shows signs of a past leak…The stucco and gutter in this area show moisture leaks and minor damage. Have a licensed contractor evaluate and repair all issues…"[6]

## B. The Cogent Letter

A representative from Cogent also inspected the home. The letter addressed to the Wards from Cogent ("Cogent Letter") shows that on April 23, 2008, the Cogent representative conducted a "[p]hase I screening review of the [house] for indications of possible water damage…"[7] The Cogent Letter indicated that there were a "limited number of areas that have likely become water damaged associated with the stucco and stone veneer."[8] Additionally, the Cogent Letter concluded that "[a] limited number of localized areas have likely experienced water damage under the stucco and stone veneers based on the non-invasive evaluation performed at the house."[9] In the Letter, the representative recommended that the Wards hire a professional to "[c]onduct [an] invasive evaluation of suspected water damaged areas to establish the construction features that allowed water damage to occur, the extent of damage and support the preparation of a repair plan. These evaluation

---

[6] *Id.* at Preferred Report Summary 2.
[7] Cogent Letter, D.I. 192, Ex. D at 1.
[8] *Id.* at 4.
[9] *Id.* at 5.

areas should include stucco areas with dark staining, areas beneath the stone veneer..."[10]

## C. Fischers Amend the Seller's Disclosure

For reasons immaterial to this Motion, the Wards did not purchase the home and the Fischers relisted the home for sale. The Fischers received the Preferred Report and Cogent Letter prior to relisting the home for sale.[11] The Fischers then amended the Seller's Disclosure.[12] The Seller's Disclosure indicates that the Fischers checked the box labeled "yes" to the questions "[i]s there any past or present water leakage in the house?" and "[a]re [sellers] aware of any problems affecting ... Exterior and Interior Walls?"[13] A handwritten note discloses that "possible problems with stucco are being evaluated for leaking and will be repaired if necessary."[14]

---

[10] *Id.*

[11] *See* DeLaurentis Dep., D.I. 175, Ex. D at 30: 34 – 31: 9:

> Q: But you do recall reading [the Cogent and Preferred] reports?
> A: Exactly, yes.
> Q: And you read them at the time that you received them?
> A: I believe so.
> Q: And you indicated earlier, I think, that you received [the Cogent and Preferred] reports some time between April 23rd and April 28th?
> A: Yes.

[12] *Compare* Mar. 15, 2007 Seller's Disclosure, D.I. 192, Ex. A, *with* May 2, 2008 Seller's Disclosure, D.I. 192, Ex. G.

[13] Seller's Disclosure, D.I. 192, Ex. G at 2, 4.

[14] *Id.* at 5.

## D. The Silversteins Purchase the Home

Mrs. Harrington acknowledged that she received and read the amended Seller's Disclosure prior to purchasing the home.[15] Mrs. Harrington and Dr. Silverstein admitted they each received and read the Preferred Report prior to settlement.[16] Dr. Silverstein also acknowledged that he was aware of stucco issues

---

[15] *See* Harrington Dep., D.I. 192, Ex. 5 at 57:23 – 58: 5:

> Q: And did you read this [sellers'] disclosure when you received it?
> A: I believe I did.
> Q: And did you receive it prior to the settlement for the purchase of the property in Wynleigh?
> A: I believe I did.

[16] *See id.* at 92:22-24; 94: 21 – 22; 96:5-15:

> Q: When did you first see [the Preferred Report]?
> A: I believe it was at the time of buying the house...
> Q: Did you read [the Preferred Report] when you got it?
> A: I believe I did at that time...
> Q: Okay. And then you got the Preferred report, it sound like, probably from your Realtor, and I assume you read it thoroughly and completely because you were concerned about the problems with the house. Yes?
> A: I believe so.
> Q: Okay. Is there any part of the Preferred report, that is now in front of you, that you did not read before the purchase of the home?
> A: I believe I read it at the time;

Silverstein Dep., D.I. 192, Ex. 6 at 18:3-6; 18:11-17:

> Q: Do you believe that this Preferred Inspection report was furnished to you and your wife prior to closing?
> A: I do...
> Q: How is it that this was provided to you at or about the time of closing?
> A: What I surmise if that this was part of a series of documents to which I was asked to append my initials. Because I see what looks like my initials at the bottom of every page.

with the home prior to settlement.[17] In a May 9, 2008 email from their realtor to the Silversteins, their realtor writes, in part:

> ...The sellers are meeting with [the original builder] today to loook (sic) over the stucco issues that were brought up by the previous home inspection. I told [the Fischers' realtor] we would like to be involved and kept in the loop with anything that goes on with this issue...I expressed our concerns that we don't want anything sealed up and repaired without us having a chance to have our inspections done and also we would like those areas to be accessable (sic) to our inspector...[18]

The Silversteins hired A-1 Inspections, LLC ("A-1") to perform a general home inspection. The May 15, 2008 report prepared by A-1 notes various areas of water damage in the home and indicates that "an obtrusive inspection may be required" to identify the underlying problem.[19] The Silversteins did not have another inspection performed. Instead, the Silversteins assert that they relied on

---

[17] *See* Silverstein Dep., at 254: 18- 255: 14:

> Q: Okay. Thank you. Now, Mr. McCullough was deposed last week and he stated very distinctly that the sellers and the buyers knew of stucco issues prior to settlement. Would you agree with that?
> A: No.
> Q: And why would you not agree with that?
> A: I can't speak for the sellers. I won't say that I had absolute no knowledge of stucco issues because it's already been pointed out that that phrase was used at least once in an E-mail that went to me at that time. I had an understanding that there were constellation of issues and concerns that were being addressed and that they would be resolved by the time of closing.
> Q: And inclusive in that constellation was stucco issues?
> A: Yes. That's actually listed in one of the documents, which is where I think that phrase came from.

[18] May 9, 2008 Email, D.I. 192, Ex. M at 1.

[19] A-1 Report, D.I. 192, Ex. R. at 3.

the Fischers' assurances that the Fischers would fix all stucco problems.[20] The Silversteins made settlement on the home on July 1, 2008.[21]

### E. The Silversteins' Complaint

The Silversteins and other plaintiffs, Christopher Koprowski and Dr. Mary Koprowski, filed the initial Complaint on May 16, 2013.[22] Of the twenty-two counts in the Third Amended Complaint, the first twenty pertain to the Silversteins' claims.[23] On September 30, 2015, Defendants filed their Joint Motion

---

[20] *See* Harrington Dep., at 101:8 – 12:

> Q: Did you discuss [major deficiencies identified in the Preferred Report] with the Realtor?
> A: I believe that all of these major deficiencies that are listed here were going to be looked into, and, like I said, addressed by the sellers, and everything would be resolved.;

Silverstein Dep., at 47:21 – 48:3:

> Q: Why weren't you concerned [about water issues with the home]?
> A: Because I was assured they were being addressed and would be resolved by the time of closing.
> Q: Who assured you of that?
> A: The seller through their signature on the addendum on the contract.

[21] Pl.'s Resp. Br., D.I. 192, at 14.

[22] D.I. 1.

[23] *See* Third Am. Compl., D.I. 166: Count I: Breach of Contract (Silversteins against Fischers); Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing (Silversteins against Fischers); Count III: Negligence (Silversteins against Fischers); Count IV: Negligent Provision of Information/§522 of the Restatement (Second) of Torts (Silversteins against Fischers); Count V: Fraudulent Misrepresentation (Silversteins against Fischers); Count VI: Negligent Inspection (Silversteins against Wayne Megill, Jr. and/or Megill Homes); Count VII: Negligence (Silversteins against Wayne Megill, Jr. and/or Megill Homes); Count VII: Negligent Provision of Information/§522 of the Restatement (Second) of Torts (Silversteins against Wayne Megill, Jr. and/or Megill Homes); Count IX: Fraudulent Misrepresentation (Silversteins against Wayne Megill, Jr. and/or Megill Homes); Count X: Consumer Fraud (Silversteins against Wayne

for Summary Judgment regarding only the Silversteins' Counts.[24]  On October 30, 2015, Plaintiffs filed their response in opposition to Defendants' Joint Motion.[25] Defendants filed a reply brief on November 20, 2015.[26]  The parties appeared before the Court for oral argument on the Motion on February 11, 2016.

## III.  THE PARTIES' CONTENTIONS

Defendants argue that the Silversteins' claims are barred by the statute of limitations.  Defendants assert that all of the Silversteins' claims are subject to a three year statute of limitations that expired on July 1, 2011.[27]  Defendants assert that the statute of limitations was not tolled because the Silversteins were on inquiry notice of the alleged injuries before they made settlement on the home.[28]

The Silversteins argue that there are genuine issues of material fact that preclude granting summary judgment.  The Silversteins assert that tolling doctrines extend the statute of limitations because the Silversteins were not on inquiry notice

---

Megill, Jr. and/or Megill Homes); Count XI: Negligent Misrepresentation – Consumer Fraud Act (Silversteins against Wayne Megill, Jr. and/or Megill Homes); Count XII: Negligent Construction (Silversteins against the Builder Defendants); Count XIII: Breach of Implied Warranty of Good Quality and Workmanship (Silversteins against the Builder Defendants); Count XIV: Consumer Fraud (Silversteins against the Builder Defendants); Count XV: Negligence (Silversteins against RE/MAX); Count XVI: Negligent Provision of Information/§522 of the Restatement (Second) of Torts (Silversteins against RE/MAX); Count XVII: Fraudulent Misrepresentation (Silversteins against RE/MAX); Count XVII: Consumer Fraud (Silversteins against RE/MAX); Count XIX: Negligent Misrepresentation – Consumer Fraud Act (Silversteins against RE/MAX); Count XX: Negligence (Silversteins against Patterson-Schwartz).
[24] D.I. 175.
[25] D.I. 192.
[26] D.I. 196.
[27] Defs.' Opening Br., D.I. 175, at 22.
[28] *Id.*

of the alleged injuries until December 15, 2012 when they received the Cogent Letter.[29] Specifically, the Silversteins argue that the doctrines of "inherently unknowable injury," fraudulent concealment and equitable tolling toll the statute of limitations.

## IV. STANDARD OF REVIEW

Super. Ct. Civ. R. 56(c) provides that summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." When considering a motion for summary judgment, the Court's function is to examine the record to determine whether genuine issues of material fact exist "but not to decide such issues."[30] The moving party bears the initial burden of demonstrating that the undisputed facts support its claims or defenses.[31] If the moving party meets its initial burden, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact to be resolved by the ultimate fact-finder.[32] "It is not enough for the opposing party merely to assert the existence of such a disputed issue of fact. The opponent to a motion for summary judgment 'must do more than simply show that there is some metaphysical doubt as to material facts.'"[33] Summary judgment will

---

[29] Pl.'s Resp. Br. at 21.

[30] *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992).

[31] *Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979).

[32] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

[33] *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

be granted if, after viewing the record in the light most favorable to the non-moving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[34] If the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment is inappropriate.[35]

## V.   DISCUSSION

The Silversteins' counts in the Third Amended Complaint allege actions for breach of contract, negligence or fraud.[36] Pursuant to 10 *Del. C.* § 8106, the statute of limitations for each of the Silversteins' claims is three years.[37] However, the Court recognizes limited exceptions that toll the statute of limitations.  To

---

[34] *Merrill*, 606 A.2d at 99-100.

[35] *See Cook v. City of Harrington,* 1990 WL 35244, at *3 (Del. Super. Feb. 22, 1990) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").

[36] *See supra* note 22.

[37] 10 *Del. C.* § 8106 provides that

> [n]o action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108-8110, 8119 and 8127 of this title.

12

determine if the statute of limitations is tolled, the Court conducts a three-part test: first, the Court decides when the cause of action accrued; second, the Court must assess whether the statute of limitations has been tolled; and third, assuming the statute has been tolled, the Court must determine when the plaintiff was on inquiry notice of the cause of action.[38]

### A. The Causes of Action Accrued On or Before July 1, 2008.

"The statute of limitations begins to run when a plaintiff's claim accrues which occurs at the moment of the wrongful act and not when the effects of the act are felt"[39] "even if the plaintiff is ignorant of the cause of action."[40] "The 'wrongful act' is a general concept that varies depending on the nature of the claim at issue."[41] A claim for breach of contract accrues when the breach occurs.[42] The cause of action for fraud accrues when the fraud is successfully perpetrated.[43] The cause of action for negligence accrues at "the time of the injury."[44]

---

[38] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312 (Del. 2004).

[39] *Airport Bus. Ctr. V LLLP v. Sun Nat'l Bank*, 2012 WL 1413690, at *7 (Del. Super. Mar. 6, 2012) (citing *Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, 2010 WL 363845, at *6 (Del.Ch. Jan. 27, 2010)).

[40] *Smithkline Beecham Pharm. Co. v. Merck & Co.*, 766 A.2d 442, 450 (Del. 2000).

[41] *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at *7 (Del.Ch. Jan. 24, 2005).

[42] *Nardo v. Guido DeAscanis & Sons, Inc.*, 254 A.2d 254, 256 (Del. Super. 1969).

[43] *Van Lake v. Sorin CRM USA, Inc.*, 2013 WL 1087583, at *6 (Del. Super. Feb. 15, 2013); *see Puig v. Seminole Night Club, LLC*, 2011 WL 3275948, at *4 (Del.Ch. Jul. 29, 2011)(For claims of fraudulent inducement, the claim accrues at the time the plaintiff entered into the agreement.).

[44] *Nardo*, 254 A.2d at 256; *see Krahmer v. Christie's Inc.*, 903 A.2d 773, 778 (Del.Ch. 2006)(For negligent misrepresentation, the claim accrues at the time the misrepresentations were made to the plaintiff.).

Viewing the record in the light most favorable to the Silversteins, the Court finds that the latest date that the alleged wrongful act could have accrued for each of the Silversteins' claims is July 1, 2008, when the Silversteins made settlement on the home. Therefore, to be timely, the Silversteins had to file their Complaint on or before July 1, 2011, three years after the alleged wrongful act. Because the Silversteins filed the initial Complaint on May 16, 2013, almost five years after the alleged wrongful act, the Silversteins' claims are time-barred unless the Silversteins can show that a tolling doctrine applies and they were not on inquiry notice of the claims.

## B. Applicability of the Tolling Doctrines.

### 1. *Discovery Rule*

"Under the 'discovery rule' the statute is tolled where the injury is 'inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of.'"[45] The Silversteins assert that the injury is "inherently unknowable" to them and they are "blamelessly ignorant" because the Silversteins were "laymen" and "there were no observable or objective factors that would put them on notice of an injury."[46] Defendants argue that had the Silversteins "acted as reasonably prudent homebuyers under the circumstances,

---

[45] *Wal-Mart Stores*, 860 A.2d at 319 (citing *Coleman v. Pricewaterhousecoopers, LLC*, 854 A.2d 838, 842 (Del. 2004).
[46] Pl.'s Resp. Br. at 20.

14

they would have undertaken steps that would have led to the discovery of the 'injury.'"[47]

Construing the record in the light most favorable to the Silversteins, the Court finds that nothing in the record indicates that the Silversteins possess any special knowledge regarding home construction and maintenance. However, whether that renders the injury "inherently unknowable" to the Silversteins is an unresolved question of fact for the jury. Similarly, if the injury is "inherently unknowable," whether the Silversteins are "blamelessly ignorant" is also a question for the jury. Therefore, the Court cannot rule that, as a matter of law, the "discovery rule" does not toll the statute of limitations.

### 2. *Fraudulent Concealment*

Fraudulent concealment is an exception that tolls the statute of limitations when "there was an affirmative act of concealment or some misrepresentation that was intended to 'put a plaintiff off the trail of inquiry.'"[48] The Silversteins, without citation to the record, list several alleged facts and assert that "[t]he evidence offered by Plaintiffs establishes that there is a reasonable inference that...[there] were affirmative acts that concealed the facts or were

---

[47] Defs.' Opening Br. at 26.
[48] *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *15 (Del.Ch. Dec. 23, 2008)(citing *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *5(Del.Ch. Jul. 17, 1998)).

misrepresentations intended to put the plaintiff 'off the trail of inquiry…'"[49] Defendants assert that there can be no fraud because the Silversteins had actual knowledge of the injury prior to executing the settlement documents.[50] The record before the Court is not well-developed regarding whether or not Defendants engaged in acts of fraud with the intent to "put a plaintiff off the trail of inquiry." Therefore, the Court cannot find, as a matter of law, that the fraudulent concealment exception does not toll the statute.

### 3. *Equitable Tolling*

The doctrine of equitable tolling "applies when a plaintiff reasonably relies on the competence and good faith of a fiduciary."[51] Plaintiffs argue specifically that the Silversteins' real estate agent and the Silversteins' home inspector were fiduciaries to the Silversteins and that it was reasonable for the Silversteins to rely upon their competence and good faith.[52] Defendants argue that the equitable tolling doctrine cannot apply because the Silversteins have made no allegations of any fiduciary relationships in this matter.[53]

---

[49] Pl.'s Resp. Br. at 22-24.
[50] Defs.' Opening Br. at 29.
[51] *Sunrise Ventures*, 2010 WL 363845, at *6.
[52] Pl.'s Resp. Br. at 27.
[53] Defs.' Opening Br. at n. 2.

16

The Court has determined that realtors are fiduciaries to their clients based upon an agency theory.[54] Delaware courts have not addressed whether home inspectors are fiduciaries to the buyers by whom they are hired to perform a home inspection. Other courts have considered the question and note that home inspectors possess a special degree of expertise and are charged with exercising due care relative to their expertise but hold that home inspectors are not fiduciaries to the buyer for whom they perform the inspection.[55] Therefore, the Court finds that, as to claims related to the realtors, the doctrine of equitable tolling tolls the statute of limitations. However, consistent with other courts' holding and the general principle that Delaware courts "ha[ve] traditionally been hesitant to expand the definition of fiduciary relationship, requiring that a 'special trust in another' or a 'special duty' exists between parties rising to the level that '[t]he relationship connotes a dependence'"[56] the Court declines to impute home inspectors with fiduciary duties to their clients. Therefore, the doctrine does not apply to the Silversteins' counts pertaining to the home inspector.

---

[54] *See Petenbrink v. Superior Home Builders, Inc.*, 1999 WL 1223786, at *3 (Del. Super. Nov. 1, 1999)("'Real estate brokers and salesman are fiduciaries, who are charged with full disclosure of all material facts to those who repose confidence in them.'"(internal citations omitted)); *see also Heller v. Kiernan*, 2002 WL 385545, at *3(Del.Ch. Feb. 27, 2002) ("The relationship between a realtor and customer is not one that ordinarily qualifies as a fiduciary relationship until an agent/principal relationship arises.").

[55] *See Zerjal v. Daech & Bauer Const., Inc.*, 939 N.E.2d 1067, 1073 (Ill. App. Ct. 2010)("...we refuse to find that the relationship between a home inspector and a home purchaser reaches the level of a "special social relationship"..."); *see also Moreno v. Sanchez*, 141 Cal. Rptr. 2d 684, 691-93 (Cal.Ct.App. 2003)(Acknowledging that a home inspector is not a fiduciary).

[56] *Heller*, 2002 WL 385545, at *3 (quoting *Cheese Shop Int'l, Inc. v. Steele*, 303 A.2d 689, 690 (Del.Ch. 1973)).

17

## C. The Silversteins were on Inquiry Notice of the Alleged Injury On or Before July 1, 2008.

Even where a tolling doctrine applies, the statute of limitations is tolled only until the plaintiff is on inquiry notice of the injury.[57] If the Court finds that the Silversteins were on inquiry notice of the injury prior to three years before the Complaint was filed, the fact that there are questions of fact regarding which, if any, tolling doctrines apply is not dispositive. If plaintiffs are on inquiry notice of the alleged injuries more than three years prior to filing the complaint, Defendants are entitled to summary judgment as a matter of law.

When a plaintiff "discovers the facts constituting a basis for the cause of action, or knows facts sufficient 'to put a person of ordinary intelligence…on inquiry, which, if pursued, would lead to the discovery of such facts,'" the plaintiff has inquiry notice of the cause of action.[58] "Inquiry notice does not require a plaintiff to have actual knowledge of a wrong, but simply an objective awareness

---

[57] *See Coleman*, 854 A.2d at 842 (citing *Becker v. Hamada, Inc.*, 455 A.2d 353, 356 (Del. 1982))(Regarding inherently unknowable injuries, "the statute of limitations begins to run upon the discovery of facts "constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery" of such facts.); *Winner*, 2008 WL 5352063, at *15 (citing *Dean Witter*, 1998 WL 442456, at *5)(Fraud is concealed "until such time as the plaintiff is put on inquiry notice."); *In re American Intern. Group, Inc.*, 965 A.2d 763, 812 (Del.Ch. 2009)(For equitable tolling, the statute of limitations is tolled only until plaintiff "was objectively aware of the facts giving rise to the wrong, *i.e.*, on inquiry notice.").

[58] *Russum v. Russum*, 2011 WL 4731120, at *2 (Del. Super. Sept. 28, 2011)(citing *Wal-Mart Stores*, 860 A.2d at 319).

18

of the facts giving rise to the wrong."[59] The Court considers a plaintiff's objective awareness by examining whether there were "'red flag[s]' that clearly and unmistakably would have led a prudent person of ordinary intelligence to inquire" further[60] and by determining if the plaintiff gained "possession of facts sufficient to make him suspicious, or that ought to make him suspicious."[61]

1. *The Silversteins Were Objectively Aware of Facts Giving Rise to the Causes of Action.*

In *Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*,[62] the plaintiff argued that the statute of limitations should have been tolled because he was unaware of environmental issues with the property he had purchased.[63] In granting defendant's motion for summary judgment, the Court of Chancery determined that the plaintiff had received a email that referenced a specific environmental study performed on the property and held that plaintiff was on inquiry notice of potential environmental issues.[64] The Court held that the plaintiff cannot "claim the protection of the tolling doctrines" because the plaintiff did not request the

---

[59] *E.I. duPont de Nemours and Co. v. Medtronic Vascular, Inc.*, 2013 WL 261415, at *11 (Del. Super. Jan. 29, 2013).
[60] *Coleman*, 854 A.2d at 842.
[61] *Sunrise Ventures*, 2010 WL 363845, at *6.
[62] 2010 WL 363845 (Del. Ch. Jan. 27, 2010).
[63] *Sunrise Ventures*, 2010 WL 363845, at *6.
[64] *Id.* at *7.

environmental study or perform his own inspection despite having the right to do both.[65]

Like in *Sunrise Ventures*, the Silversteins had documents that referenced potential stucco issues and that a more intrusive report, the Cogent Letter, had been prepared on the home. Like the plaintiff in *Sunrise Ventures*, the Silversteins did not seek to obtain the Cogent Letter. However, the Silversteins did have their own inspection performed by A-1. That inspection notes various areas of water damage in the home and indicates that "an obtrusive inspection may be required" to identify the underlying problem.[66] Therefore, the Silversteins had more reason to be suspicious than even the plaintiff in *Sunrise Ventures*.

Similarly, in *In re Dean Witter Partnership Litigation*,[67] the Court of Chancery found that investors were on inquiry notice of potential misconduct by the investment firms in which they invested when investors received reports of profitable investment forecasts but the underlying data did not support the forecasts.[68] The Court held that "even where defendant is a fiduciary, a plaintiff is on inquiry notice when the information underlying plaintiff's claim is readily available."[69] The Chancellor ruled that "[i]t is not too much to ask investors to read beyond the first page of an annual report, to read past the rosy forecasts and

---

[65] *Id.*
[66] A-1 Report at 3.
[67] 1998 WL 442456 (Del.Ch. Jul. 17, 1998).
[68] *Dean Witter*, 1998 WL 442456, at *7-8.
[69] *Id.* at *8.

actually look at the cold, hard figures provided to them" when the information is readily available and dismissed the investors' claims as time-barred.[70]

Although the Silversteins assert that they reasonably relied on the competence and skill of professionals to act on their behalf, like in *Dean Witter*, the information regarding the condition of the home was readily available to the Silversteins. Therefore, like in *Dean Witter*, it is unreasonable for the Silversteins to blindly rely on others. There were several "red flags" that should have raised the Silversteins' suspicions regarding the condition of the home. It is unmistakably clear that information contained in the amended Seller's Disclosure, information contained in the Preferred Report and email communication between the Silversteins and their realtor should have made a prudent person of ordinary intelligence inquire further into the condition of the home.

The amended Seller's Disclosure indicates that the there is past or present water leakage in the house;[71] and that the sellers are aware of problems affecting the exterior and interior walls.[72] The amended Seller's Disclosure also contains a handwritten note that states that "possible problems with stucco are being evaluated for leaking and will be repaired if necessary."[73] Mrs. Harrington

---

[70] *Id.* at *8-9.
[71] Seller's Disclosure at 2.
[72] *Id.* at 4.
[73] *Id.* at 5.

acknowledged that she received and read the Sellers' Disclosure prior to purchasing the home.[74]

Additionally, the Preferred Report indicates, in part, that there were several "major deficiencies." The summary section of the Report states that

> In addition to the home inspection, an additional more intrusive evaluation was being preformed (sic) by Cogent Building Diagnostics to determine the presence of potential moisture build up behind the stucco or stone. The home inspection evaluation revealed details which would indicate moisture intrusion onto the sheathing or into the basement on the band board. These observations were confirmed by Cogent. The boundary between the stucco and the stone does not appear to have been installed correctly and is wicking moisture back into the sheathing area. The front right corner where the garage meets the house is leaking into the basement and causing mold build up on the band board. The front unfinished sections of the basement show moisture penetration along this wall. It is recommended that Cogent do an intrusive evaluation to determine the extent and repair needed for these issues.[75]

The same notation appears on page six of the Report.[76] The Preferred Report indicates, with regard to the roof covering, "[t]he front right bedroom…shows signs of flashing or roof leaks in the dormer area…The right rear family room shows signs of a past leak…The stucco and gutter in this area show moisture leaks and minor damage. Have a licensed contractor evaluate and repair all issues…"[77]

---

[74] *See supra* note 14.
[75] Preferred Report at Summary 1.
[76] Preferred Report at 6.
[77] Preferred Report at Summary 2.

Mrs. Harrington acknowledged she received and read the Preferred Report prior to settlement.[78] Dr. Silverstein also acknowledged that he received the Preferred Report and initialed each page prior to settlement.[79]

Additionally, in an email from the Silversteins' realtor to Mrs. Harrington and Dr. Silverstein dated May 9, 2008, the realtor writes, in part:

> ...The sellers are meeting with [the original builder] today to loook (sic) over the stucco issues that were brought up by the previous home inspection. I told [the Fischers' realtor] we would like to be involved and kept in the look with anything that goes on with this issue...I expressed our concerns that we don't want anything sealed up and repaired without us having a chance to have our inspections done and also we would like those areas to be accessable (sic) to our inspector...[80]

Dr. Silverstein also admitted that he was aware of stucco issues with the home before making settlement on the home.[81] Although both Mrs. Harrington and Dr. Silverstein assert they had not received the Cogent Report that details the extent of the stucco issues until early 2013, a reasonably prudent person would have recognized "red flags" prior to that date. The Court draws all reasonable inferences in favor of the Silversteins and finds that the Silversteins were on inquiry notice, if not actual notice, of the stucco problems at or before July 1, 2008, the date they made settlement on the home.

---

[78] *See supra* note 15.
[79] *See id.*
[80] May 9, 2008 Email, D.I. 192, Ex. M at 1.
[81] *See supra* note 16.

23

## 2. *The Silversteins Would Have Discovered the Stucco Issues by the Exercise of Reasonable Diligence.*

In addition to finding that the Silversteins were on inquiry notice of the stucco issues, to grant summary judgment the Court must also find that the Silversteins would have discovered the stucco issues had they exercised reasonable diligence.[82] In *Sunrise Ventures*, the Court of Chancery held that the plaintiff who was on inquiry notice of his claims for an environmental injury because an email he received referenced an environmental study, "by the exercise of reasonable diligence," could have discovered the alleged environmental injury.[83] The Court reasoned that had the plaintiff requested the environmental study or performed his own environmental study, the plaintiff "could have easily discovered the problems [the environmental study] identifies about which [plaintiff] now complains."[84]

Similarly, the Silversteins were on inquiry notice of the stucco problems because of the information contained in the Seller's Disclosure and Preferred Report that the Silversteins acknowledged they had received prior to settlement. The Preferred Report specifically references the Cogent Letter and states, in part,

> ...an additional more intrusive evaluation was being preformed (sic) by Cogent Building Diagnostics to determine the presence of potential moisture build up behind the stucco or stone. The home inspection evaluation revealed details which would indicate

---

[82] *Sunrise Ventures*, 2010 WL 363845, at *7.
[83] *Id.*
[84] *Id.*

> moisture intrusion onto the sheathing or into the basement on the band board. These observations were confirmed by Cogent...It is recommended that Cogent do an intrusive evaluation to determine the extent and repair needed for these issues.[85]

In the exercise of reasonable judgment, the Silversteins should have inquired further into the stucco issues and requested the Cogent Report. Furthermore, in the exercise of reasonable judgment, the Silversteins should have investigated the issues identified in the A-1 inspection including reports of various areas of water damage in the home a recommendation that "an obtrusive inspection may be required" to identify the underlying problem.[86]

The Court finds, faced with all of these "red flags," it was unreasonable for the Silversteins to rely on the assurances of the Fischers that repairs had been completed.[87] Drawing all reasonable inferences in favor of the Silversteins, at the lastest, the statute of limitations began to run on July 1, 2008 and the action as it relates to the Silversteins is time-barred. Therefore, summary judgment in favor of Defendants is appropriate for Count I through and including Count XX of the Third Amended Complaint.

---

[85] Preferred Report at summary 1.

[86] A-1 Report at 3.

[87] *See supra* note 19.

## VI. CONCLUSION

The Court finds that the undisputed facts show that the statute of limitations for the Silversteins' claims began to run on July 1, 2008 because the Silversteins were on inquiry notice of their claims on or before that date. The Court further finds that the Silversteins' Complaint, filed on May 16, 2013, is time-barred. Therefore, Defendants' Joint Motion for Summary Judgment as to Count I through and including Count XX in the Third Amended Complaint is **GRANTED**.

**IT IS SO ORDERED.**

_____
Ferris W. Wharton, Judge